MCGREGOR W. SCOTT
United States Attorney
GRANT B. RABENN
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

ROBERT A. ZINK
Acting Chief
KYLE MAURER
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., NW
Washington, DC 20005
Telephone: (202) 514-2000
Facsimile: (202) 514-3708

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHESTER L. NEAL, JR., <br> aka Chad Neal, <br> aka C.J. Neal, <br> aka Chad Nealson, <br> aka Chad Brothers, <br> aka Chad Guzman, <br> aka Christopher Dubois, <br><br> Defendant. | CASE NO. 1:17-cr-00300-DAD-BAM <br><br> PLEA AGREEMENT <br><br> COURT: Hon. DALE A. DROZD |

I. **INTRODUCTION**

A. **Scope of Agreement.**

The indictment in this case charges the defendant with Mail Fraud, in violation of 18 U.S.C. § 1341 (Two Counts). This document contains the complete plea agreement between the United States

PLEA AGREEMENT          1

Attorney's Office for the Eastern District of California, the United States Department of Justice, Criminal Division, Fraud Section (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and the United States Department of Justice, Criminal Division, Fraud Section and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B.   **Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

II.   **DEFENDANT'S OBLIGATIONS**

A.   **Guilty Plea.**

The defendant will plead guilty to Count One of the indictment, which charges him with Mail Fraud, in violation of 18 U.S.C. § 1341. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.     Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Victim Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods of in or around July 2008 through in or around December 2017. At the time of sentencing, the defendant can argue that the restitution owed is no less than $2,869,945.32. Further, at the time of sentencing, the government can argue that the restitution owed is no more than $3,734,927.50.

In agreeing to allow the government to argue for an upper restitution range of $3,734,927.50, the defendant is not conceding that this is in fact the correct restitution amount, but is instead agreeing that the government may make this argument and it is up to the Court to determine the correct restitution amount. Likewise, in agreeing to allow the defendant to argue for the lower restitution range of $2,869,945.32, the government is not conceding that this is in fact the correct restitution amount, but is instead agreeing that the defendant may make this argument and it is up to the Court to determine the correct restitution amount. Nonetheless, if the Court decides that the restitution owed is any amount up to $3,734,927.50, the defendant waives his right to appeal the restitution order, as set forth in § VII.B.

### C.     Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### D.     Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw

his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the count(s) to which he pleaded guilty; (2) to reinstate any count(s) that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such count(s) including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any count(s) that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E. Forfeiture.

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1).

The defendant also voluntarily stipulates and agrees that as part of his sentence the Court may, pursuant to Fed. R. Crim. P. 32.2(b), order a forfeiture money judgment in an amount no less than $2,869,945.32 but no more than $3,734,927.50 less any forfeited funds.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order

to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

### III. THE GOVERNMENT'S OBLIGATIONS

**A.   Recommendations as to Sentencing Range.**

1. Sentencing Range.

The government is not limited to arguing for a sentence within the guideline range.

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**B.   Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, to wit, Mail Fraud:

First, the defendant knowingly participated in and devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $250,000, a 3-year period of supervised release and a special assessment of $100 on each count of conviction. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees to a restitution order as set forth in Section II.B. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The

defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. Base Offense Level:

   Seven (7) pursuant to § 2B1.1(a)(1).

2. Loss Amount:

   The parties agree that the defendant may argue for no less than an Sixteen (16) level enhancement pursuant to § 2B1.1(b)(1)(I) for more than $1,500,000 loss and the government may argue for no more than an Eighteen (18) level enhancement pursuant to § 2B1.1(b)(1)(J) for more than $3,500,000 loss.

3. Offense Involving 10 Or More Victims:

   Two (2) level enhancement pursuant to § 2B1.1(b)(2)(a)(i) for an offense that involved 10 or more victims.

4. Acceptance of Responsibility: See paragraph III.B.2 above

5. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references. The defendant may, however, request that the Court apply the sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence than that called for under the Sentencing Guidelines' advisory guideline range as determined by the Court.

## VII.     WAIVERS

**A.     Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty he is waiving the following constitutional

PLEA AGREEMENT                                      8

rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence, including forfeiture and restitution orders. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence, including forfeiture and restitution orders, imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution or forfeiture the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, including restitution and forfeiture, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the count to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations

(including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: _____

CARRIE MCCREARY
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: _____

CHESTER L. NEAL, JR.
Defendant

PLEA AGREEMENT                                                10

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:                                      MCGREGOR W. SCOTT
United States Attorney

_____
GRANT B. RABENN
Assistant United States Attorney

KYLE MAURER
Trial Attorney

EXHIBIT "A"

Factual Basis for Plea

From in or around July 2008 through in or around December 2017, within the Eastern District of California, and elsewhere, defendant CHESTER L. NEAL, JR. did knowingly and with an intent to defraud, devise and intend to devise a scheme and artifice to defraud numerous victim vendors and to obtain money, property, and services from victim vendors by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly place and cause to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service and any private and commercial interstate carrier.

The purpose of the scheme was for CHESTER L. NEAL, JR to enrich himself by defrauding at least 35 Victim Vendors. CHESTER L. NEAL, JR did this by securing government contracts and then inducing the Victim Vendors into performing the work required by the contracts through false and fraudulent representations. When NEAL was ultimately paid by the government for the Victim Vendors' work, he did not pay the Victim Vendors, but instead he kept the money for personal use.

CHESTER L. NEAL, JR. established and controlled several entities including C.L. Neal Construction, Inc., Phoenix Underground Construction, Inc., Phoenix Construction Service, LLC ; and Elska Peninga, LLC; (collectively, the "Companies"). Through the Companies he controlled, NEAL bid on contracts to provide goods and services to the United States Army, the United States Air Force, the National Park Service, the United States Bureau of Reclamation, the United States Fish and Wildlife Service, and other departments and agencies of the United States (collectively, "Government Agencies"). From in or around July 2008 through in or around December 2017, CHESTER L. NEAL, JR. bid on and won at least 105 contracts. These contracts required CHESTER L. NEAL, JR. to provide the Government Agencies with various goods and services, including purchasing and transporting metric tons of aggregate rock, gravel, and other raw materials to sites like military bases and national parks. After winning these government contracts, CHESTER L. NEAL, JR. completely subcontracted the work to the Victim Vendors such that they provided all of the goods and services to the Government Agencies.

CHESTER L. NEAL, JR. made several misrepresentations in order to induce the Victim Vendors to perform the contractually required work. For example, CHESTER L. NEAL, JR. falsely promised to pay the Victim Vendors for their work. In several cases, the Victim Vendors quoted NEAL a price for completing the work that was higher than the price that CHESTER L. NEAL, JR. had bid to win the contracts. Nevertheless, NEAL falsely promised to pay the Victim Vendors their quoted prices. CHESTER L. NEAL, JR. also submitted credit applications with false information, including false credit references, to certain Victim Vendors. These false credit applications caused some Victim Vendors to agree to provide lines of credit to CHESTER L. NEAL, JR. and perform the required work without CHESTER L. NEAL, JR. providing collateral. Additionally, in some cases CHESTER L. NEAL, JR. used false names and aliases to misrepresent his identity.

Once the Victim Vendors performed the contractually required work, CHESTER L. NEAL, JR. obtained proof of their work and provided it to the government in certain cases. The government then paid him, typically via electronic transfer to bank accounts that CHESTER L. NEAL, JR. controlled. Despite receiving payment from the government, CHESTER L. NEAL, JR. did not pay the Victim Vendors as agreed for their goods and services. Instead, CHESTER L. NEAL, JR. fraudulently retained the majority of the proceeds for his own personal benefit, and spent certain proceeds at places like

nightclubs, restaurants, and hotels.

In total, between in or around July 2008 and in or around December 2017, CHESTER L. NEAL, JR. defrauded the Victim Vendors of at least between $2,869,945.32 and $3,734,927.50 by not paying them for the services that they rendered and goods they delivered to the Government Agencies despite promises to do so.

In furtherance of his scheme to defraud, CHESTER L. NEAL, JR. in the Eastern District of California, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, did knowingly place and cause to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service and any private and commercial interstate carrier, as more particularly described below:

| Approximate Date | Description |
| --- | --- |
| October 30, 2015 | Invoices mailed from a Victim Vendor, located in Oakdale, California, within the Eastern District of California, to the Yosemite Conservancy in El Portal, California, within the Eastern District of California. |

PLEA AGREEMENT       A-2